**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GENE GATHRIGHT, #322222,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 3:23-CV-1028-K-BH** |
| | ) | |
| **WAYNE MCCOLLUM DETENTION** | ) | |
| **CENTER,** | ) | |
| **Defendant.** | ) | **Referred to U.S. Magistrate Judge[1]** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the plaintiff's claims should be **DISMISSED with prejudice** for failure to state a claim.

## I. BACKGROUND

Gene Gathright (Plaintiff), a prisoner in the Texas state prison system, sues the Wayne McCollum Detention Center (Jail) and a doctor who works there (Doctor),[2] alleging that Doctor failed to provide him adequate medical care in violation of the Eighth Amendment to the United States Constitution. (*See* docs. 3, 7.)

Plaintiff alleges that on August 19, 2022, his arm got caught he was getting out of his top bunk bed, and he hyperextended his shoulder. (doc. 3 at 4.)[3] Although the date of his first report to medical staff at the Jail is unclear, he claims that he was denied medical attention from December of 2022 to March of 2023, despite complaining to Jail personnel numerous times. (doc. 7 at 2.) At the end of March, Plaintiff spoke with a nurse at the Jail and asked to be seen by "the

---

[1] By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for full case management.

[2] Plaintiff lists "Dr. Garcia" as the named defendant in this lawsuit. (*See* doc. 7 at 5.) He does not mention this name elsewhere in the pleadings, only referring to "the main doctor" at the Jail. (*Id.* at 2-3.) All references to the main doctor at the Jail are liberally construed as referring to the named defendant.

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

main doctor." (*Id.*) The nurse informed him that there was nothing that the staff could do to help his injury. (*Id.*) On an unspecified date, Plaintiff was given antibiotics for his shoulder, but he was never given pain medication. (*Id.* at 1.)

On May 9, 2023, Plaintiff filed this lawsuit. (doc. 3.) Six days later, which was six months after he first began complaining of his injury, he was taken to a local orthopedic specialist, who told him that he likely had a torn rotator cuff. (doc. 7 at 1-2.) The specialist purportedly told him that he would need an MRI, but as of June of 2023, he had not received one, only an X-Ray. (*Id.* at 2.) Plaintiff currently has a pocket of fluid on his upper back and shoulder that has worsened in the months since the injury occurred and makes it difficult for him to sleep, and he is in extreme pain. (doc. 3 at 4.) He claims that he did not receive any medical attention and was only given permission to use a bottom bunk bed after filing this suit. (doc. 7 at 1-2.) He also maintains that the injury could threaten his livelihood because he works as a truck driver and that the delay in receiving adequate care will make surgery more difficult and prolong his recovery. (*Id.* at 6.) He seeks $50,000 in damages. (*Id.*)

## II. PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*. (*See* doc. 5.) As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. SECTION 1983

Plaintiff's claim for monetary damages based on the alleged denial of adequate medical care is liberally construed as arising under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Plaintiff appears to allege that the Jail and Doctor violated his rights under the Eighth Amendment. (doc. 7 at 1-5.)

### A.    Non-Jural Entity

Plaintiff initially sued the Jail. (doc. 3 at 1.)

A plaintiff may not bring a civil rights action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural

authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. The Jail is not a jural entity subject to suit. *See, e.g.*, *Gonzales v. Lew Sterrett Dall. Cnty. Jail*, No. 3:08-CV-1510-D, 2008 WL 4921428, at *3 (N.D. Tex. Nov. 13, 2008) (holding that county jail was a non-jural entity); *Carson v. Dall. Cnty. Jail*, No. 3:13-CV-0678-K, 2013 WL 3324222, at *2 (N.D. Tex. June 28, 2013) (same).

*Pro se* plaintiffs who name a non-jural entity as a defendant should be alerted and given an opportunity to amend before dismissal of the action. *See Parker v. Fort Worth Police Dep't*, 980 F.2d 1023, 1026 (5th Cir. 1993). Here, Plaintiff was informed in a questionnaire[4] that the Jail appeared to be a non-jural entity that is not subject to suit and advised of his right to name a new defendant. (*See* doc. 7 at 5.) In response, he listed Doctor as a defendant. (*Id.*) His claims against the Jail, to the extent he continues to assert any, should be dismissed. *See Carson*, 2013 WL 3324222, at *2.

## B. Constitutional Violation

The Eighth Amendment to the Constitution requires humane conditions of confinement, which includes the receipt of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials violate this requirement only when (1) the deprivation is objectively and sufficiently serious such that the act or omission results in the denial of "the minimal civilized measure of life's necessities" and (2) the official had a culpable state of mind. *Id.* at 834 (citations omitted). The objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To satisfy the second component, the officials must be deliberately indifferent "to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S.

---

[4] Plaintiff's responses to a questionnaire are considered an amendment to his pleadings. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

at 828. This state of mind requires more than negligence but less than intent to cause harm or knowledge that harm will result from the acts or omissions. *Id.* at 835. An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

This state of mind "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted). An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)); see also *Mace v. City of Palestine*, 333 F. 3d 621, 626 (5th Cir. 2003) (the defendant must have the subjective intent to cause harm). Similar conduct includes intentionally "delaying access to medical care" and "interfering with treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). For a delay in medical care to rise to the level of a constitutional violation, there must be deliberate indifference that results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A failure to provide additional treatment may show medical malpractice but not deliberate indifference; decisions to provide additional treatment are matters of medical judgment. *Estelle*, 429 U.S. at 107. Neither an incorrect diagnosis, *Domino*, 239 F.3d at 756, nor mere disagreement with medical treatment, *Gobert*, 463 F.3d at 346; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001), suffice to state a claim. Constitutionally adequate care does not ensure that an inmate will agree with every treatment decision. *See Estelle*, 429 U.S. at 107-08. Neither negligent medical

care nor medical malpractice rises to the level of a constitutional violation. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

Here, the lone allegation pertaining to the conduct of Doctor—the only defendant named in this lawsuit—is Plaintiff's conclusory statement that Doctor knew that Plaintiff was injured. (doc. 7 at 3.) Plaintiff does not provide any facts to support his conclusion, however, and he does not allege that Doctor was aware of the severity of his injury. He also does not claim that the severity of his condition was so obvious as to render Doctor's delay in providing treatment unconstitutional. *See Guzman v. Cockrell*, No. 9:10-CV-111, 2012 WL 4017926, at *7 (E.D. Tex. Sept. 4, 2012) (holding that a delay in medical treatment was not unconstitutional where the plaintiff "presented as an ambulatory inmate complaining of pain but not bleeding excessively (or at all), not having trouble breathing, not experiencing dizziness or having blacked out or showing any … indicia requiring immediate access to health services[.]" (internal quotation marks omitted)). And he does not allege that Doctor refused to treat him, ignored his medical complaints, or intentionally treated him incorrectly so as to cause harm. *Johnson*, 759 F.2d at 1238; *Mace*, 333 F. 3d at 626. Accordingly, Plaintiff fails to allege that Doctor was deliberately indifferent "to a substantial risk of serious harm" to Plaintiff. *Farmer*, 511 U.S. at 828.

Plaintiff also does not adequately plead that any delay by Doctor in providing treatment caused substantial harm. He alleges that he has endured a significant injury, but that injury occurred when he hyperextended his elbow while getting out of his bed. The substantial harm had already occurred before the delay in treatment. *See Stephens v. Aderoju*, No. 9:14-CV-170, 2017 WL 11710594, at *4 (E.D. Tex. Oct. 24, 2017) (holding that delay in medical care did not violate the Eighth Amendment because "the 'substantial harm' had already occurred" and "[n]o additional harm accrued due to the alleged delay"); *see also McGiffin v. Clayton*, No. 08-40213, 2009 WL

577721, at *1 (5th Cir. 2009) (per curiam) (plaintiff did not state a claim for an Eighth Amendment violation where he was denied the proper catheters for several months, in part because he did not allege that this delay caused any "lasting complications").

Plaintiff expressly states that he disagrees with the treatment he received, and that the failure to provide him medical care constitutes negligence. (*See* doc. 7 at 1, 4.) Disagreement with a course of medical treatment is insufficient to state a § 1983 claim, however. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *Norton v. Dimazana*, 122 F. 3d 286, 292 (5th Cir. 1997). Because it appears that Plaintiff simply disagrees with the treatment he received, and a failure to provide additional treatment does not amount to deliberate indifference, he fails to state a claim. *Estelle*, 429 U.S. at 107. Even assuming his allegation of negligence is directed at Doctor, (doc. 7 at 4), mere negligence or medical malpractice does not violate the Constitution, *see Stewart*, 174 F.3d at 534.

Plaintiff has failed to state a claim for inadequate medical care in violation of the Eighth Amendment.

### IV. MEDICAL MALPRACTICE

To the extent Plaintiff also seeks to assert a claim for medical malpractice under state law, this claim likewise fails.

Under 28 U.S.C. § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim under pendant or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus

of operative fact." *McKee v. Texas Star Salon, LLC*, No. CIV.A.3:06-CV-879BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); see *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000).

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); see also 28 U.S.C. § 1367(c)(3).10 This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton*, 231 F.3d at 997; *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); see also *United Mine Workers*, 383 U.S. at 726 ("[P]endant jurisdiction is a doctrine of discretion, not of [a] plaintiffs right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law medical malpractice claim because it arises from the same "common nucleus of operative facts" as his federal claims. Turning to the merits of his malpractice claim, under Texas law, medical malpractice claims require the showing of (1) a duty by the physician or hospital to act according to the applicable standard of care; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003) (stating the elements when "the negligence alleged is in the nature of medical malpractice") (citing *Mills v. Angel*, 995 S.W.2d 262, 267 (Tex. App.–Texarkana, 1999,

no pet.)). Plaintiff's lone allegation that Doctor knew that Plaintiff was injured does not provide sufficient factual content to establish any of these four elements. He therefore fails to state a claim upon which relief may be granted with respect to any medical malpractice claims that he may assert.

## V. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Nos. 3:96-CV-2923-D, 3:97-CV-0353-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). A verified questionnaire allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint.").

Plaintiff has responded to a questionnaire and has had seven months to amend his complaint. He has had ample time and opportunity to plead his best case, and further leave to amend is not warranted.

## VI. RECOMMENDATION

Plaintiff's claims should be **DISMISSED with prejudice** for failure to state a claim. This dismissal will count as a "strike" or "prior occasion" within the meaning of 28 U.S.C. § 1915(g).[5]

**SO RECOMMENDED** on this 6th day of December, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F. 3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.